## CITY OF WICHITA FALLS et al. v. BRUNER et al.

### No. 14429.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 16, 1942.

Rehearing Denied Nov. 13, 1942.

T. A. Hicks, Harvey Harris, and Thelbert Martin, all of Wichita Falls, for appellants.

Bullington, Humphrey & Humphrey and Frank Ikard, all of Wichita Falls, for appellees.

SPEER, Justice.

L. B. Bruner and about sixty others, to whom we shall refer as plaintiffs, for themselves and all other persons whose interests were similar, instituted this suit against the City of Wichita Falls, to which we shall refer as City, and Wichita County Water Improvement District No. 1, to which we shall refer as Improvement District, for a mandatory injunction to require defendants to open a gate or lock in an irrigation canal leading from what is commonly known as Lake Wichita, which canal conveys water from the lake to the vicinity of plaintiffs' irrigable land, and to enjoin defendants from again closing said gates or locks and preventing water from flowing from the lake into the canal and onto plaintiffs' property. It was alleged that plaintiffs for many years had owned and enjoyed the use of said water through the canals and that defendants had wrongfully and without lawful authority closed the gates and refused to permit the water to flow through same to their property.

Trial was had to the court and judgment entered granting the relief sought, suspend-

ing the judgment pending appeal. Defendants have appealed.

No brief has been filed by the Improvement District, but the defendant City relies upon several points presented for reversal. They are, in substance: (1) The contract which plaintiffs seek to enforce has been rescinded by them for more than twenty years, and there are no allegations showing they have complied therewith; (2) the City has no authority to engage in the irrigation business, no allegations were made that it could or should engage in such business and that it had never assumed any previous contract to so engage in that business; (3) the City had a prior right under the law to appropriate all waters in Lake Wichita for domestic purposes without condemnation proceedings, and that the City therefore did not wrongfully cut off the water from the lake and prevent it going into the irrigation canals.

In April, 1901, a charter was issued, creating "Lake Wichita Irrigation and Water Company". Thereafter, that corporation acquired several thousand acres of land on Holiday creek in Wichita and Archer Counties. A dam was constructed across the creek about five miles from the City of Wichita Falls, causing the flood waters to be impounded and forming what is now Lake Wichita. Henry Sayles and others acquired about 1,500 acres of land below the dam and on June 15, 1903, entered into a contract with the Irrigation Company for what each termed "permanent water rights" for their lands, in the waters of Lake Wichita. The contract was made between the Irrigation Company and Henry Sayles, trustee (the beneficiaries were not disclosed). The contract provided, among other things, that the company would, upon payment of the consideration by Sayles, convey to him, those whom he represented and those holding under him or them, a permanent water right in the waters of Lake Wichita, to the extent of 2,000-acre feet of water, which was to mean water to the extent of twelve inches per acre during twelve months of the year, for the life of the charter, which was 50 years. The water right was subject to a similar one said to have been previously made with the City of Wichita Falls. The Irrigation Company obligated itself to construct and maintain certain canals and sub-laterals, and provided it should have a right-of-way for such canals and a roadway adjacent to them. Sayles, as trustee, obligated himself and those he represented to pay to the Irrigation Company for the water right $40 per acre for the land to be irrigated, one-third was paid in cash and the remainder evidenced by deferred payments over a period of years, with privilege of paying before maturity by paying a named bonus. In addition to $40 per acre, it was agreed that the users of water would pay to the Irrigation Company $2 per acre each year as a toll fee and for the conveyance of the water through the canals; the company was to maintain the canals at its own expense. A lien on the irrigable land was created to secure the tolls and deferred payments, and in addition, a lien was reserved on all crops grown on each tract to secure payment of the item of $2 per acre for conveying through the canals. There were provisions that under certain conditions the toll fee would be reduced, but they are unimportant here. It was stipulated that the contract was a covenant that ran with the land to subsequent purchasers. It was provided that subsequent holders of the land by deed should be entitled to water from the company's lake under the permanent water right, only upon payment of the toll charges for the conveyance of the water through the canals.

In March, 1909, the directors of the Irrigation Company passed a resolution authorizing its president to convey the lands referred to in the contract of June 15, 1903, with Sayles, to M. Lasker, I. H. Kempner, J. A. Kemp, and Henry Sayles, and to each of them in severalty the water rights contained in the original contract, and stipulated that owners of said lands may take charge of the ditches serving said lands and pay the expense of maintaining them, in lieu of the amount of $2 per acre for toll and conveyance charges mentioned in the contract. On the same day, agreeable with the resolution, the conveyance of the water right contracted to be conveyed was made by the president of the Irrigation Company to the above named parties.

In view of the fact that the last mentioned conveyance was made to effectuate the former contract to convey the water rights, we take it to mean that the full contract price had been paid for which a lien had been retained in the contract, changing the transaction from an executory to an executed one. This for the reason no lien was retained in the conveyance to secure any future part of the purchase price.

On August 1, 1912, the Irrigation Company sold to Texas Utilities Corporation all of the lands included in the reservoir of Lake Wichita, owned by the grantor, together with all water supply canals, ditches, laterals, road-ways and easements owned by it and used in connection with said lake and reservoir. By mesne conveyances by and through several subsequent corporations, the City of Wichita Falls acquired what passed under the last mentioned conveyance.

On December 31, 1924, Lake Wichita Irrigation and Water Company, under authority of a resolution of its Board of Directors, conveyed to Wichita County Water Improvement District No. 1 (one of the defendants here) all of grantor's real and personal property and assets of every kind and character wherever situated, "including easements, rights-of-way for canals, water rights, water right contracts and the like".

All of the plaintiffs are shown to be successors in title to the original grantors, namely, Lasker, Kempner, Kemp and Sayles. Those who testified in the case said they had for many years gotten the water onto their lands from canals originally placed there by the Irrigation Company, and that since 1924, when defendant Improvement District took it over, the Improvement District had kept up the canals and collected the $2 toll or conveyance charges, until the water was cut off shortly before the institution of this suit. None of them claimed to have ever paid the toll or conveyance charge to the City, and none had been demanded of them by the City.

The record shows that Oral Jones was the president of defendant Wichita County Water Improvement District No. 1, and that on October 29, 1940, the City of Wichita Falls, acting through its Mayor, wrote a letter to the Improvement District, declaring that a necessity had arisen for the conservation of all water in Lake Wichita to be used for municipal purposes only and the Improvement District should not thereafter furnish any water from the lake for irrigation purposes. On November 6, 1940, a letter from the defendant Improvement District was sent to all plaintiffs owning land in the irrigated area, advising them of the letter from the City of Wichita Falls, and that because of those instructions no more water could be furnished from the lake for irrigation purposes. The Improvement District disclaimed any financial interest in or contractual relations with any of the landowners' water rights. From and after the date of this notice to the landowners the gates to the conveying canal were closed and no more water was permitted to flow from the lake into the canal and to plaintiffs' lands.

■ The record does not disclose the nature of any contractual relation between the City and the Improvement District, with regard to which, if either, had or claimed the right to furnish or refuse to furnish water from the lake to plaintiffs. From the conveyances above referred to the City purchased certain properties and rights from the grantees of the original irrigation company, from whom plaintiffs and their predecessors in title claimed the water rights. By the conveyance from the irrigation company to the Improvement District, every right, title and claim of every kind and character then owned by the irrigation company passed to the Improvement District; as between the two conveyances certainly the City and the Improvement District took their respective rights subject to the previously acquired water rights of plaintiffs. The record indicates that since the date of the conveyance to the Improvement District, it has assumed to care for the canals and ditches through which plaintiffs obtained water and had been collecting the toll or conveyance charge of $2 per acre from plaintiffs. At the request of the City, the Improvement District closed the gates and discontinued furnishing water.

We have concluded that neither of the defendants had a right to deprive plaintiffs of their water rights as was done without reimbursing them therefor.

■■ Nothing was said in the conveyances through which the defendants claim about rights previously conveyed by the Irrigation Company to the predecessors in title of plaintiffs. Plaintiffs' title was of record and defendants were charged with constructive notice thereof and such rights as they took were subject to those of plaintiffs. When the Irrigation Company sold to Sayles and others the water right to 2,000-acre feet, the purchasers and their successors in title acquired an easement and an interest in the real estate of the Irrigation Company embraced within the lake and reservoir. Texas Co. v. Burkett, 117 Tex. 16, 296 S.W. 273, 54 A.L.R. 1397; Goodwin v. Hidalgo County Water Control & Improvement District No. 1, Tex.Civ.App. 58 S.W.2d 1092, writ dismissed. The ease-

ment right so acquired is in the nature of land and is a covenant that goes with the land. Edinburg Irrigation Co. v. Paschen, Tex.Com.App. 235 S.W. 1088; Chapman v. American Rio Grande Land & Irrigation Co., Tex.Civ.App., 271 S.W. 392, writ refused.

■ In defendant City's first group of points it is contended that plaintiffs have rescinded and breached their contract for water rights. If this contention is based upon the theory that plaintiffs have not paid the $2 toll or conveyance charge each year, we do not think it tenable. As we construe the original contract and the construction placed thereon by the parties who made it, the payment of the toll and conveyance charge did not become one of limitation of title nor one which, if violated, would forfeit the title and reinvest it with the grantor. It is axiomatic that the law does not favor forfeitures. We have seen that the conveyance of the permanent water right to Sayles and his associates was fully executed; there were no provisions reserved for reversion of title for failure to pay the toll charges. Our courts will construe provisions of an instrument as covenants rather than conditions for passing defeasible titles if such a construction is reasonable under all the circumstances. It often becomes necessary to apply a strict construction rather than a liberal one to effectuate the evident intention of the parties. Where the language used is of doubtful meaning it will be held to be a covenant rather than a limitation of title. 12 Tex. Jur., secs. 84 to 86, pages 128 to 132. If the payment of the annual toll charge of $2 was a limitation upon the title passed by the conveyance the non-payment of which would forfeit the title, then it would be difficult to see how plaintiffs and their predecessors in title could ever acquire the irrevocable title to the easement and permanent water right for which they paid $40 per acre—in such circumstances the title would never become vested. We believe that under a fair construction of the written instrument the item of $2 annual toll charge was intended to cover the expense of maintaining the canals and conveying the water through them to plaintiffs' service ditches. We say this because: (1) The Irrigation Company obligated itself to maintain the conveying canals and apparently performed that duty until the defendant Improvement District began it in 1924, and had continued that service until the water was cut off in 1940, and (2) because it was stipulated by the resolution of the Board of Directors of the Irrigation Company when the conveyance was ordered made, that Sayles and those claiming under him could assume the expense of care for the canals and water conveyance in lieu of the payment of $2 toll charges. Moreover, if it could be said that plaintiffs' title to water rights was limited and subject to forfeiture for failure to pay the toll charge, we find nothing in the record indicating substantial delinquencies in payments. True, no tolls were paid to the City but were made to the Improvement District, who kept up the canals and conveyed the water, as the original Irrigation Company had obligated itself to do.

■ The second group of points raised by the City consists of complaints that the trial court enforced upon it the necessity of engaging in the irrigation business by requiring a specific performance of the contract made by Sayles and his associates with the original irrigation company. We do not so construe the nature of this suit nor the judgment entered by the court. It appears that the City had assumed the authority to instruct the Improvement District to desist from furnishing plaintiffs with water from Lake Wichita for irrigation purposes. Upon such instructions the Improvement District closed the gates and cut off the water. The judgment of the court ordered both defendants to open the gates so previously closed and enjoined them from again closing the gates.

■ The third and last group of points presented by the City assert in substance that it, as a municipality, has, at all times involved here, had a first and prior right to the appropriation of all the water in Lake Wichita and any rights acquired therein by plaintiffs and their predecessors in title were subordinate to those of the City. The City earnestly insists, in effect, that as a matter of public policy and the general public good, it had the preference right to all said water for public use, and that the former acts of the Irrigation Company and those with whom it contracted could not supersede its rights to the appropriation of the water at such time as a public necessity arose therefor. Reference is made to articles 7553, 7555 and 7559 R.C.S., passed since the time involved in this transaction. However, we note in the chapter of which the above articles are a part, Article 7469 is included. There it is provided:

"Nothing in this chapter shall prejudice private vested rights." In Reeves v. Pecos County Water Improvement District No. 1, Com.App., 299 S.W. 224, discussing a similar situation to the one before us, it was held substantially that a statute cannot impair the obligations of an existing contract. That if the statute had not so declared (as in this instance), the fundamental law of the land would protect persons holding vested rights against subsequent legislative acts. We do not believe that the passage of the statutory provisions referred to by the City in this case render its rights greater before its passage than they became afterwards when the provisions of Article 7469, above quoted, especially provided that prior vested rights should not thereby be impaired.

There is nothing in the judgment of the trial court that will preclude the City, should it determine to do so, from taking the waters of Lake Wichita for municipal purposes by condemnation proceedings, nor should anything said in this opinion be construed as determining that question. It is not before us.

Finally, we hold that the judgment of the trial court is correct, and we therefore overrule all points assigned for reversal. The judgment should be affirmed, and it is so ordered.

On Motion for Rehearing.

Appellant City of Wichita Falls objects to the statement made by us of the nature of this suit; more especially because we said, in substance, that it was an action for a mandatory injunction to require defendants to open a gate or lock in an irrigation canal leading from Lake Wichita to plaintiffs' irrigable lands; and to enjoin defendants from again closing said gates and preventing water from flowing from the lake to the area of plaintiffs' lands. It requests us to make a more accurate statement, since it is claimed that nowhere in the pleadings are gates and locks mentioned.

Within a limited degree its contention is correct; but the petition and exhibits, upon which the suit was based, covers nearly 50 pages in the transcript, and we think the further statement made by us as disclosed by the opinion covers, substantially, the points in controversy.

The statement of the nature and result of the suit found in the City's brief before us is really much shorter than the one made by us. It is in this language: "The suit was based upon a contract made between Lake Wichita Irrigation & Water Co. and Henry Sayles, Trustee, which was executed June 15, 1903, and the effect of the judgment against the City of Wichita Falls is to require such defendant to specifically perform that contract."

There is substantial testimony in the record to support the court's findings and the judgment entered thereon. As shown by our discussion of the case, plaintiffs held a water right in Lake Wichita, the dam, canals and privileges formerly owned by the old Irrigation Company; that the City and Improvement Districts acquired all of the rights, privileges and property of the old Irrigation Company. That prior to the time plaintiffs were "cut off" (which we assume meant that the irrigation waters were discontinued), the Water District was maintaining the canals and through them furnishing water for passage into plaintiffs' laterals for irrigation purposes; that the Improvement District claimed no interest in the lake or its waters, but was so furnishing the water "at the courtesy of the City of Wichita Falls", as stated by a representative of the District. That the water was cut off upon the request of the City. No one in fact said in so many words that any lock, gate or other device was closed on the canal or elsewhere in order to "cut off" the water.

Prayer in the petition was for a temporary writ of injunction to require the Improvement District to furnish in its canals the water from the lake to plaintiffs' laterals and to restrain it from further cutting off said water or depriving plaintiffs of the use thereof; and to restrain the City from interference with the use of water to plaintiffs for irrigation purposes and that the injunction finally be made permanent.

The judgment provided that the mandatory writ of injunction prayed for should be granted, and, among other things, that the City should furnish the water in the canals leading from the lake to lands of plaintiffs and to connect said waters into the canals free and unobstructed so that they flow will be unimpeded; that both the City and the Improvement District should be and were enjoined and restrained from in any manner interfering with the delivery of water from the lake into the canals leading from the lake to plaintiffs' laterals on their own land, except insofar as the City was authorized by its title to the use of 2,000-acre feet to which it holds a prior right over those of the plaintiffs.

The appellant, City of Wichita Falls, was well within its rights to ask that we be absolutely accurate in a statement of the matters involved, and although we did refer to the opening of gates and locks, when that identical language was not used by the pleader, it is clear to us from this record that a closing of gates or locks of some character was necessary to cut the water off between the canals and lateral ditches, hence our abbreviation of from ten to twenty pages of the petition.

We yet believe we have made a proper disposition of this appeal, and the motion for rehearing is overruled.