## CITY OF WICHITA FALLS v. BRUNER et al.

No. 14686.

Court of Civil Appeals of Texas. Fort Worth.

May 11, 1945.

Rehearing Denied June 22, 1945.

T. A. Hicks and Thelbert Martin, both of Wichita Falls, for appellant.

W. B. Chauncey, Bullington, Humphrey & Humphrey, and Lucian W. Parrish,· all of Wichita Falls, for appellees.

SPEER, Justice.

This is the second phase of the above styled cause appealed from the District Court of Wichita County, Texas.

On July 16, 1941, L. B. Bruner and about sixty others instituted a suit against the City of Wichita Falls and Wichita County Water Improvement District No. 1, both being municipal corporations, for injunctive relief in their own behalf and for the benefit of all other persons similarly situated.

On February 7, 1942, plaintiffs recovered judgment for a mandatory injunction against the City of Wichita Falls, requiring it to open the gates and remove any obstruction placed in the main canal leading from Lake Wichita to the lands of plaintiffs and permanently enjoining both the City of Wichita Falls and the Water District from thereafter closing said gates or placing other obstructions in said canal to prevent the free flow of water down the canal to the vicinity of plaintiff's property.

From this judgment, the City of Wichita Falls alone appealed, and that judgment was affirmed by this court on October 16, 1942. See City of Wichita Falls et al. v. Bruner et al., Tex.Civ.App., 165 S.W.2d 480, writ of error refused. In the cited opinion much of the historical background of this controversy is set out, and we shall refrain from repeating what is there said except when necessary to a disposition of the points raised on this appeal.

On October 28, 1942, while motion for rehearing was pending in this court, plaintiffs filed a second amended petition seeking damages for the alleged wrongful acts of the defendants in depriving them of the water from the lake and canals. On May 1, 1944, the original plaintiffs and five other landowners who had intervened as plaintiffs in the suit, filed a third amended petition, praying for the damages before mentioned; T. C. Mundy intervened on June 14, 1944.

On May 6, 1944, defendant City of Wichita Falls answered and interposed its plea in abatement as against plaintiffs' third amended petition (filed May 1, 1944) based upon allegations that plaintiffs had elected to seek injunctive relief and did not assert any cause of action for damages before such hearing upon the petition for injunction and were bound by their election of remedies.

The City plead misjoinder of parties plaintiff and that the petition was insufficient to assert a class suit. It urged several special exceptions in these respects to the sufficiency of plaintiffs' petition.

The City filed a general denial and pleaded specially the election of remedies by plaintiffs, the two year statute of limitations, and that the City of Wichita Falls had complied in every respect with the mandatory and injunctive orders of the trial and appellate courts. The Water District answered at length, but because the court entered judgment for that defendant, of which judgment no complaint is made by plaintiffs, we deem it unneces-

sary to go into matters raised by that pleading.

The case was submitted to the court without a jury and judgment was entered reciting, among other things, that 27 of the plaintiffs and interveners (naming them) announced in open court that they would not further prosecute their suit and effect was given, in the judgment, to that announcement.

There is a finding by the court in the judgment that 40 of the plaintiffs and interveners, all named therein, should recover against the appellant the amounts set opposite their names. Exceptions were taken by the City of Wichita Falls to the judgment and appeal was perfected.

Appellant requested findings of fact and conclusions of law. These findings are necessarily long, but the court summed up its findings of fact relative to the history of the respective titles of the parties by adopting and specially referring to the facts recited in the opinion of this case on the other appeal. 165 S.W.2d 480.

The court further found as a fact and the evidence supports it, that the waters from Lake Wichita were conveyed by a main canal from the lake to the vicinity of appellees' lands, and from the canal by laterals and ditches on to said lands. That under the provisions of the conveyance of the water right and easements to Henry Sayle, trustee, in 1903, the appellees have a first and prior right to the use of said waters and the canal, except for a prior grant to appellant for 2,000 acre feet of water. (There is no contention here that there was any shortage of the supply of water from the lake.) He further found that for mutual convenience appellant had requested the Water Improvement District to handle the delivery of water through the canal to appellees and to collect a service charge of $2 per acre and to service the ditches. The tolls, with the consent of the City of Wichita Falls, were paid by the landowners to the Water District, but the District only undertook this duty as a matter of convenience and at the instance and request of the City, and had no actual or proprietary interest in the water of Lake Wichita and the canals, laterals, and ditches leading to the lands of the various plaintiffs in this case. That on October 29, 1940, the City instructed the Water District to deliver no more water in the canal for the use and benefit of the plaintiffs. This request was complied with by the Water District.

The court further found that after the gates in the canal were closed and the waters were cut off from passing into the canal feeding the laterals to plaintiffs' lands, the City refused to permit the opening of the gates and locks into the said canals, laterals, and ditches prior to the month of June, 1943. And, as a result of the acts of said City, the plaintiffs were deprived of water from Lake Wichita for irrigation purposes between November 6, 1940 until the latter part of June, 1943.

There was a further finding of fact that although the landowners often requested the City and the Water District officials to turn water into the said main canal for use by them, that they each refused to comply with said request and that the Water District declined upon instructions from the City of Wichita Falls and that the Water District would have complied with such request and opened the ditch had the City of Wichita Falls instructed it or permitted it to do so.

There was a further finding that on account of the wrongful act by the City of Wichita Falls in causing the plaintiffs to be deprived of the water from Lake Wichita for the period of time above set forth the respective plaintiffs suffered damages in loss of crops, extra expense, and in rental value of their land in the respective amounts found and entered in their favor under the decree of the court. The Court concluded as a matter of law that under the facts so found and stipulated by the parties, the City of Wichita Falls was liable to the plaintiffs in the amount of damages set opposite their respective names in the judgment.

Appellant, City of Wichita Falls, has assigned 21 points of error for reversal. Aside from procedural matters, it occurs to us that point one and those asserting limitation are largely decisive of the entire controversy. The substance of the first point is that appellant is not liable for damages in this case because it had committed no legal wrong nor violated any legal right nor breached a legal duty owed to appellees. Appellant relies upon the settled principle of law to the effect that for a party to have redress in damages, he must show that the other party has committed a legal wrong which act was a violation of a legal right of the other and

a breach of duty owed by the one to the other. Generally, the proposition of law is sound and appellant has cited many authorities to support it.

This record does not support the contention that appellant had done no wrong or that it had breached no duty it owed to appellees. In the previous judgment on the injunction proceedings, entered February 7, 1942, it was determined that appellees had a permanent right in the waters of Lake Wichita, and with it the right to have such waters pass through the main canal to the vicinity of their properties. That the City of Wichita Falls caused the waters from the canals leading from Lake Wichita to the land of these plaintiffs to be wrongfully "disconnected and cut off." In the same judgment the court ordered the City to connect the water from the lake and permit it to pass unobstructed into the canal so that it could flow unimpeded from the lake to the laterals connecting the lands of plaintiffs with the canal leading from the lake. That judgment is now final; it had the approval of both this and the Supreme Court.

It was determined in that judgment that plaintiffs had an easement running with the title to their lands, in the lake and the canals through which water was contracted by the Irrigation Company and its successors in title to pass on to plaintiffs' land. The appellant had acquired certain water rights through the mesne conveyances but all such rights, except a 2,000 acre feet water right purchased prior to the rights of plaintiffs', were subject to those of plaintiffs. It does not appear from any instrument conveying water rights to appellant that it took over any part of the main canal and laterals thereof situated south and east of the city limits; but, it is apparent from the record that there is only one canal leading from the dam to the City's water plant and that it continues on through the city south and east to the vicinity of plaintiffs' lands, and that all water going to that area must pass through the main canal. It is argued that appellant breached no contract or obligation owing by it to appellees when it caused the gates in the canal to be closed and refused to permit water to continue to flow through the canal to plaintiffs' property. The judgment above referred to found that it had wrongfully discontinued the flow of water through the canal. Appellant's predecessors in title

had obligated themselves to send water through the canal to appellees' property, and when appellant purchased the canal from the dam site to its water works plant, it took title subject to the rights of appellees. Appellant could take no more than its predecessors had or could convey. Appellees (the plaintiffs) had a property right in not only the water in the lake, but a right that the water should pass through the main canal and on to the vicinity of their lands. These rights were in writing and of record in the deed records and appellant was charged with notice thereof. When appellant purchased the lake site and the canal from the dam to its water plant it was required to respect the previous rights of appellees to have the water pass through the canal to their lands; meaning that in accepting what appellant purchased, it by implication agreed to respect the superior rights of others. This it obviously did not do. We shall have more to say in this regard under a discussion of limitations.

It is contended by second point that appellees had waived their right to recover damages caused by the acts of appellant. This contention is based upon a stipulation made between the parties at the hearing on injunction. The substance of that stipulation is: That if it should be determined by the Court that appellees (plaintiffs below) were entitled to the injunctive relief sought by them against the City of Wichita Falls and the latter should decide to institute condemnation proceedings, against appellees, the City should in such proceeding have the right to try out the amount of damages plaintiffs (below) should receive. Immediately following that provision the stipulation contains this language: "No rights of either plaintiffs or defendant City of Wichita Falls, Texas, are to be impaired or waived by this stipulation."

Waiver, as distinguished from estoppel, means the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. The Prætorians v. Strickland, Tex.Com.App., 66 S.W.2d 686. In the absence of an express renunciation of a right, a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby. 43 Tex.Jur. 897, sec. 6. From the above-quoted language used in the stipulation between the parties we are

convinced that neither party intentionally waived or otherwise agreed to impair their rights. There is yet another all sufficient reason why appellant cannot rely upon waiver by appellees; it did not plead waiver as a defense. Many decisions handed down prior to the present Rules of Procedure announce the necessity of such a pleading. The same principle is brought forward by the specific provisions of Rule 94, Texas Rules Civil Procedure. Absent a pleading of this defense, appellant cannot now rely upon it.

Points 3 to 7 are grouped in appellant's brief. It discusses only three of these points. Those discussed are in effect, (3) Court erred in not sustaining appellant's special exception to the amended pleading because a wrong measure of damage was alleged; (5) The judgment should be reversed because none of the appellees attempted to mitigate their damages, and (6) Judgment should be reversed because many of the appellees had never used water for the irrigation of their land.

█ Referable to the special exception and the pleading complained of, we find the measure of damages pleaded is somewhat involved but it may be summed up to mean, that appellees were truck farmers on small tracts of land in the irrigable area with acreage running from one to twenty acres; that they had, at a great expense, leveled and fertilized their grounds in a way suitable for irrigation purposes and raised vegetables for market; that from November, 1940, to June, 1943, the appellant had wrongfully deprived them of the water from Lake Wichita to which they were entitled; during which time their lands were practically worthless to them and "that the difference in the reasonable rental value and the actual value of the use of said lands (during the period in which they were deprived of water) was the sum of $100.00 per acre per annum, and that to those of the plaintiffs who actually cultivated and used said land, the damage was much more." That those who did cultivate the lands could and would have realized at least $500 per acre per annum more if they had had water than they did realize therefrom during the time they were deprived of water. There are other allegations which may well be construed to mean that the reasonable value of the water of which they were deprived during the time it was cut off was $150 per acre per annum.

For reasons which we shall presently show, we need not determine whether the exception presented was sufficient as such under Rule 90, Rules Civil Procedure. In its brief, appellant contends that in such cases as this the true measure of damages is the difference between the rental value of the land with the water, and its rental value without the water. It relies upon some cited California cases to support its contentions.

The record discloses that during the trial a controversy arose when appellees were attempting to prove their damages, somewhat in line with their allegations; counsel for appellant objected and asserted that the true measure of damages was, "What their lands would have produced." We may assume he meant what the lands would have produced if water had been available. From that time on throughout the trial, appellees' counsel adduced his evidence upon that theory, along with evidence of rental values with and without water, and appellant made no objections thereto. It would unnecessarily lengthen this opinion to review the great volume of testimony given by appellees. None was offered by appellant to contradict them. Appellant's cross-examination of witnesses was based upon the same theory. The court found as a fact that because of the wrongful acts of appellant in depriving appellees of water for irrigation purposes, "The respective plaintiffs suffered damages in loss of crops, extra expense, and in the rental value of their lands in the respective amounts found and entered in their favor under the decree of this court, reference to which is here made." While the evidence was not confined to the precise measure of damages pleaded by appellees, as stated, appellant made no objections thereto but invited any possible error and chose the theory which was adopted, and the issue was determined, at least by the implied consent of the parties, in this manner. Rule 67, Rules Civil Procedure.

In Texas Irr. Co. v. Moore, Bryan & Perry, Tex.Civ.App., 153 S.W. 166, 168, writ refused, the measure of damages was in issue, under conditions somewhat similar to those in this case, and a charge was approved where the court said that the measure of damages is "the difference between the value of the crop raised, less the cost of raising, harvesting, and marketing the same, and the value of the crop that would have been raised if it had been

properly watered, less the cost of raising, harvesting, and marketing." A similar rule was later announced by the Commission of Appeals in an adopted opinion in American Rio Grande Land & Irrigation Co. v. Mercedes Plantation Co., Tex.Com. App., 208 S.W. 904.

There is no merit in appellant's contention that the judgment should be reversed because appellees made no effort to mitigate their damages. Some of the appellees endeavored to water their gardens from wells, but they found the supply insufficient; they were told that Lake Kemp water would be furnished if they would accept it, but it is undisputed that Lake Kemp water would kill their plants and spoil the land because of its mineral content. It does not appear from the record how appellees could have mitigated their damages, nor can we perceive just how it could have been done.

It is argued that many of the appellees made no attempt to plant and cultivate crops on their lands during the years the water was cut off; that none applied for water or paid for water during the time and only a few paid water rentals during 1940. They argue that many never did pay water rentals and that it is to be presumed they did not use water for irrigation purposes. There were perhaps fifty of the appellees who testified and we may judge by the references made to the testimony of a large number that they did not continue their truck raising during the time the water was cut off because they knew such crops could not be profitably grown in that area without irrigation. It can hardly be said that the appellees did not protest the discontinuation of water because one man appeared as a representative of all before the City Council and also wrote a letter of protest.

There is a general assertion by appellant that some of the landowners never did use water on their lands for irrigation purposes, but we are unable to ascertain from the record who they were, unless they were among those who withdrew from the suit or rented their lands to others. The fact that some had never paid the water toll of $2 per acre could not affect their rights unless water was denied them on that account, and nothing of this nature appears in the record.

Error is claimed in the eighth point because the court awarded damages accruing between February 26, 1943, when the appellant wrote a letter rescinding its order to cut the water off, and June, 1943, when the water was actually turned on and permitted to flow through the canal. The mandatory order of the trial court to the appellant to open the canal and permit the water to flow through was affirmed by this court, and the mandate was received by the trial court February 19. Appellant did, on February 26, rescind its order to close the gates made in November 1940, but it remains undisputed that because of a controversy between appellant and the Water Improvement District, the obstructions in the canal were not removed until June 1943. Appellant's wrongful acts continued from the closing until the opening of the canal, and appellees' damages likewise continued during that time.

Points 9, 10 and 11 assign error in entering judgment as the court did, because appellees' claims or at least some parts of them were barred by the statutes of two year limitations. Application of the two year statute involves many things in this particular case. To enumerate some of these matters, indicating that we have considered them, they are: Class suits, amendments, new causes of action, citation, as well also whether or not the act of appellant complained of by appellees was a tort or a breach of an implied part of a written instrument.

We have concluded that the points are not well taken and the four years statute of limitation applies to this particular suit and if we are correct in this, all of appellees had commenced and prosecuted their suit within that period.

In 1903 Lake Wichita Irrigation & Water Company, a corporation, purchased lands in Wichita and Archer Counties, and created a water reservoir or lake known as Lake Wichita about six miles from the City of Wichita Falls. That corporation sold and conveyed in writing, duly recorded, to Henry Sayles, trustee, a permanent water right in Lake Wichita to the extent of 2,000 acre feet of water per annum for irrigation purposes applicable to described lands. With that water right the irrigation company obligated itself to pass the water from the Lake through its gravity canal to the irrigable area there, to be distributed upon the lands by means of laterals and ditches prepared for that purpose. These permanent rights, privileges, and easements were covenants that

went with and were a part of the land; City of Wichita Falls v. Bruner et al., Tex. Civ.App., 165 S.W.2d 480. In fact, the conveyance to Saynes so provides, and appellees are the undisputed successors in title to Sayles; they are therefore joint owners of a very definite property right in the waters of Lake Wichita and the gravity canal therefrom to their land; the irrigation company obligated itself to keep and maintain the lake and said canal for the purpose of effectuating the sale of the water right. Thereafter the irrigation company did for many years pass water through the canal and the landowners exercised their right to its use.

██ Subsequent to the sale of the above-mentioned rights and easements, the irrigation company sold to different companies and corporations similar rights and privileges to the waters of Lake Wichita, subject in each instance, to the rights of Sayles and his successors in title. Eventually, the irrigation company had conveyed all it owned and the corporation was dissolved. City of Wichita Falls (appellant) purchased of the several other concerns their rights and the lands upon which the lake is situated, and the gravity canal or ditch, and the lateral thereto, commonly known as the main gravity ditch or canal beginning at the dam on the lake site and continuing about six miles "To the reservoir of Wichita Falls Water and Light Company (now the reservoir of Wichita Falls Water Company) in the City of Wichita Falls, Texas." Such conveyances to the appellant, excepted therefrom, the previous rights conveyed by the irrigation company to Henry Sayles, trustee. Appellant's rights so purchased were subject to those previously acquired by appellees. It will be observed that appellant purchased only such interest in the lake, its waters, and the main gravity canal leading from the dam to its water works plant, that were not owned by appellees.

It was stipulated by the parties that the Lake Wichita Irrigation & Water Company was the common source of title; that corporation had obligated itself to maintain the gravity canal so that the water from the lake would flow to the irrigable area. In November, 1940, appellant caused a gate or lock in said canal to be closed, somewhere in the vicinity, perhaps, of its water plant, and thereby prevented a further flow down stream through

the canal to appellees' property. The record does not disclose the precise location of the lock or gate, but obviously it was not on that part of the canal which appellant had purchased; if it had been, water could not have reached the water supply plant. Appellant's interest in the canal ended at the water plant reservoir; then the gate or other obstruction must have been down stream from there and on property in which appellant had no interest.

Appellant had actual and constructive notice of the rights of appellees. It must have known from the record that the irrigation company had obligated itself to keep the gravity canal free of obstruction and permit the water to permanently continue to flow through it to the appellees' lands. Appellant could not, and did not, purchase from its immediate grantors more than they owned; those grantors purchased from the irrigation company, the common source of title, and in all conveyances the rights of appellees were excepted, and residues were taken subject thereto.

██ We have concluded that under the facts and circumstances involved here, appellant, by accepting the conveyances of title to such as it purchased, by a reasonable implication it agreed and obligated itself that it would not close or otherwise obstruct the flow of water in the gravity canal between the lake and appellees' lands. Appellant did precisely what its remote grantor obligated itself it would not do.

We think this illustration will explain appellant's status: A owns two tracts of land; one is so situated that it is not accessible to highways or other conveniences; he sells that tract to B and in addition conveys to him a permanent easement or outlet through his other tract and obligates himself to permit the outlet to remain open. A sells his second tract to C subject to his previous conveyance to B. We think C took the second tract with the implied covenant that he, too, would always permit that easement and outlet to remain open and that he would not obstruct it to the detriment of B.

It is a universally settled rule of law in this state that "What is implied in a written contract is as much a part of it as though it were expressed therein." 10 Tex.Jur. p. 318, sec. 183, and the many cases cited in footnote.

If we are correct in these conclusions, it must follow that appellees' cause of action was not barred by the two year statute but is controlled by either Article 5527, sec. 1, or Article 5529, R.C.S.

Points 12, 13, and 14 assert error because the trial court did not sustain its pleas of res judicata, estoppel and election of remedies.

From what has already been said, it is apparent that this suit was originally instituted for immediate equitable relief from acts by appellant which appellees asserted were wrongful and that said acts had damaged appellees and would continue to do so unless appellant was required to remove the obstructions in the irrigation canal, which it wrongfully placed there. In the same suit appellees amended their pleadings from time to time and sought damages resulting from the alleged wrongful conduct of appellant. Even though appellees sought the most speedy relief available the wrongs continued for nearly two and a half years. At no time was it ever contended by appellees that appellant's acts amounted to a permanent damage to their property; they did not seek nor did they recover any permanent damages. We need not discuss the line of decisions relied upon by appellant, for they announce the settled rule that an aggrieved party may not recover double damages, that is, loss of the value of his land, and at the same time procure an injunction restraining the other party from doing the thing for which he seeks recovery.

We think it is in harmony with our system of jurisprudence for one party to avail himself of the equitable remedy of injunction and stop the offending act, rather than permit it to continue and rely, in the future, upon a series of lawsuits filed within the limitation periods. 4 Tex. Jur. 104, sec. 74. In this case it is clear that no damages were sought or recovered when the court heard and determined the injunction phase of the case. Our laws wisely provide for a more speedy disposition of injunctions than the ordinary suit for debt or damage. We hold that the matter of damages was not adjudicated at the injunction hearing and that by timely amendments appellees could in the same suit properly present their claims for damages occasioned by the acts of appellant which the court had required it to remedy.

What we have already said is applicable to the point in which estoppel is claimed. Nothing appears in this record to indicate that appellees have said or done anything which misled appellant into doing something to its own hurt. This all important element of estoppel is entirely absent from the record. It seems that all of appellant's acts toward restoring appellees' water rights were done somewhat reluctantly at the fartherest end of the lawsuit.

There is no election of remedies in a case of this character. The equitable remedy by injunction to stop a wrong and remedy it, when it can be done, is not an inconsistent remedy to the injured party's right to have redress during the time the wrong existed. In this state legal and equitable rights are blended and a choice of remedies for either equitable or legal relief is not required in cases like this. 15 Tex.Jur. 824, sec. 4.

The fifteenth point covers a great amount of territory; it asserts error because the court declined a special exception complaining that the suit for damages was brought by 26 persons and by amended petition 40 more persons were named as plaintiffs, without a motion, or order of the court, and without the issuance and service of citation. We do not know just which amended petition is referred to; there were three. Anyway, it is sufficient to say that appellant filed an answer after the filing of the last-amended petition, but one intervener, Mr. Mundy, filed his intervention subsequent to the answer of appellant. There is no doubt from this record that appellant appeared and vigorously contested every contention of all appellees. No objection was made by appellant at the trial to the testimony of Mr. Mundy, and he, like all other witnesses, was thoroughly cross-examined. The judgment recites that all parties appeared, etc.; there is nothing to indicate that the amendments were filed in vacation, and under these conditions the appearance of a defendant renders immaterial whether the amendment was made upon leave of court or whether notice of filing was given. 33 Tex.Jur. 803, sec. 7.

Point 16 complains because of misjoinder of parties plaintiff and failure of the court to sustain appellant's motion for a severance. In view of the nature of this.

suit, we overrule the point on authority of Rule 40, Rules Civil Procedure. We see no abuse of discretion in the trial court declining to sever all these suits when all claims were against the same party and grew out of identically the same transaction.

Points 17, 18, and 19 complain because the court overruled appellant's exception to the petition wherein it was claimed to be a class suit. We see no merit in the contention for the reason no person recovered a judgment except those named as plaintiffs. It is unnecessary for us to determine whether this was or was not a class suit. Appellant has suffered no injury upon the grounds urged. A most interesting discussion of class suits was recently handed down by our Supreme Court. See Richardson et al. v. Kelly, Receiver, Tex.Sup., 191 S.W.2d 857.

No error is presented by points 20 and 21, which complain because the court overruled appellant's exceptions to the finding of facts and because the court declined to find the additional facts requested by appellant.

We overrule all points of error and affirm the judgment of the trial court.