**I. H. MILLER, Appellant,**

**v.**

**Julius M. GORDON, Appellee.**

No. 15007.

Court of Civil Appeals of Texas.

Dallas.

Oct. 28, 1955.

Rehearing Denied Dec. 2, 1955.

Ross H. Scott, Dallas, for appellant.

Leachman, Gardere, Akin & Porter, Henry D. Akin, Dallas, for appellee.

DIXON, Chief Justice.

I. H. Miller, appellant, the holder of a promissory note, filed suit against Julius M. Gordon, the endorser, and pled that he had given notice of dishonor, but in the alternative pled that if he had not given notice, the endorser had waived his failure to do so by making a partial payment. After a trial before the court without a jury, the trial court rendered judgment for the endorser.

Most of the facts are undisputed. Fred Browning executed a note for $5,000, dated June 30, 1952, payable to appellant Miller, and due in ninety days. This note was endorsed on the back by Julius M. Gordon, appellee. The note was not paid at maturity, but Miller, the holder, did not give notice to Gordon, the endorser, of presentment for payment and dishonor by Browning, the maker of the note.

However, about December 1, 1952, which was after the due date, Browning, the maker of the note, informed Gordon, the endorser, that Miller was insisting on payment and that if Gordon would pay $1,500 on the note he, Browning, could and would renew the balance without his endorsement, thereby relieving the endorser of all further liability in connection with the note. Thereupon Gordon, believing that he would be relieved of liability by so doing, gave Browning his check for $1,500 payable to Miller, which check Browning turned over to Miller, receiving credit for the $1,500 on the note. Gordon, the endorser, did not communicate with Miller, the holder of the note, in connection with the payment of the $1,500. His conversation and dealings were with Browning, the maker of the note. In fact there had been no conversation between Miller and Gordon concerning the note since its execution and delivery.

Browning, notwithstanding his representation to Gordon, did not renew the note. However he did make a payment of $1,000 on March 2, 1953 and another payment of $1,000 on June 22, 1953, leaving $1,500 principal still unpaid on the note. Subsequent to the last payment, Browning died.

After Browning's death Miller, the holder of the note, made demand on Gordon, the endorser, for payment. Gordon's response to this demand was a letter as follows:

"Well over a year ago I did endorse Fred's note for $5000.00 which he could not meet when it came due. To that end I sent him $1500.00 to pay on it, relieving myself of the liability, and upon his statement that the $1500.00 would enable him to renew the note on his own for ninety (90) days at which time he could pay it.

"I heard nothing more from Fred, nor was I presented with any new note to endorse (which I would not have done). Under this set of circumstances I do not feel that I have any liability in this matter and, of course, for your sake, I am very much in hopes that Fred's estate will be able to pay you off the $1500.00."

Sec. 89, of Art. 5938, Vernon's Ann.Civ.St., provides that notice of dishonor must be given to an endorser of a negotiable note, and any endorser to whom such notice is not given is discharged. Sec. 104 of the statute provides that where the person giving and the person to receive the notice reside at different places, as was the case here, the notice if sent by mail must be deposited in the post office in time to go by mail the day following the day of dishonor. However, Sec. 109 of the same statute provides that any endorser may expressly or by implication waive compliance with the above provisions. Of course, should an endorser waive notice of dishonor, he will not be entitled to the protection afforded by the statute.

The only question before us is whether under the circumstances in this case the trial court erred in failing to hold that the endorser by implication waived notice of dishonor.

In Cassity v. Smith, Tex.Civ. App., 193 S.W.2d 991, error ref., it is held that intention is an essential element of waiver. See also City of Wichita Falls v. Bruner, Tex.Civ.App., 191 S.W.2d 912. In the instant case the trial court expressly found as a fact that it was not the intention of appellee Gordon by making the partial payment to waive plaintiff's failure to give notice of dishonor, but on the contrary it was appellee's intention to be relieved of liability by reason of such payment. The burden was on appellant to plead and prove waiver by appellee. 43B Tex.Jur. 490. In our opinion the facts and circumstances disclosed by the record in this case are sufficient to support the trial court's judgment.

The judgment is affirmed.

On Motion for Rehearing.

Appellant in his motion for rehearing says that our holding is in conflict with

the holding of the Commission of Appeals in the cases of Farmers' & Mechanics' National Bank v. Head, 7 S.W.2d 61, and Anderson v. Ladd, 131 Tex. 479, 115 S.W. 2d 608, 609. We have again studied the opinions in the two cited cases and have again concluded that our holding in the instant case presents no conflict with them.

In Farmers' & Mechanics' National Bank v. Head, supra, the court in discussing the subject of waiver of notice of dishonor, says [7 S.W.2d 63]: "The true test is the intention of the indorser." The facts were that after maturity of the note, the indorser had two conversations with the holder of the note in which he, the indorser, acknowledged his liability and promised to pay, but asked that the holder not press for payment at the time, since there was a mortgage securing the debt. The indorser requested that the security be sold and the proceeds credited to the note before he be required to pay. We agree with the Commission of Appeals that under the facts waiver of notice was indisputably established.

In Anderson v. Ladd, supra, Ladd and Martin were stockholders, officers, and directors of the Hub Company, an insolvent corporation. They were also indorsers on the corporation's note. They knew both before and after maturity that the corporation could not pay. In writing and verbally Ladd plead for additional time to pay. Martin did so verbally. They tried to make such arrangements. After some negotiations the holder of the note refused to accede to the proposed arrangement for additional time for the indorsers to pay. These facts certainly established a waiver by Ladd and Martin of notice of dishonor.

But the facts in the instant case seem to us materially different. We think the evidence here, which we have presented in substance in our original opinion, is sufficient to support the trial court's conclusions: "Defendant did not waive notice of dishonor either expressly or impliedly. The partial payment made by defendant on said note after maturity, as qualified and explained by the accompanying circumstances of his intent to be released from further liability by such payment, did not constitute a clear recognition of continued liability, was not reasonably such as to induce the conclusion that such waiver was intended, did not evidence a willingness of the indorser to be bound by the contract notwithstanding the laches of the holder, and did not constitute the use of words showing a clear intention to pay."

The motion for rehearing is overruled.